## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DEENAY OCHOA

ADRIAN ORONA

JUAN VILLAGOMEZ,

and all others similarly situated,

      Plaintiffs,

v.

RUBEN ISRAEL AGUILAR

HIGH HORSE INVESTMENT LLC, and

HH ADMINISTRATION LLC,

      Defendants.

2:24-cv-00597-WJ-KRS

**JURY TRIAL DEMANDED**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
## COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)

Molly A. Elkin (*Pro Hac Vice*)
Patrick J. Miller-Bartley (*Pro Hac Vice*)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., NW
Suite 1000
Washington, DC 20005
Telephone: (202) 833-8855
Fax: (202) 452-1090
mae@mselaborlaw.com
pmb@mselaborlaw.com

Shane Youtz
Stephen Curtice
Youtz & Valdez PC
900 Gold Ave. SW
Albuquerque, NM 87102
Telephone: (505) 244-1200

shane@youtzvaldez.com
stephen@youtzvaldez.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL BACKGROUND.................................................................................. 2

III.   PROCEDURAL BACKGROUND....................................................................... 4

IV.   ARGUMENT ......................................................................................................... 4

   a.   The FLSA's Collective Action Mechanism........................................................ 5

   b.   The Evidence Plainly Establishes that Defendants Maintained a Common Policy and
       Practice of Retaining Budtender Tips in Violation of the FLSA......................................... 7

       1.   Notice is Appropriate because Defendants' Tipping Policy Facially Violates the FLSA
           and Applies to All of Defendants' Locations ................................................................. 7

       2.   Plaintiffs' Declarations and Defendants' Admissions Support Substantial Allegations
           that Defendants Improperly Retained and Commandeered Plaintiffs' Tips in Violation
           of the FLSA................................................................................................................. 8

       3.   Plaintiffs have Provided a Reasonable Basis to Conclude that Defendants' Policy
           Applied Equally across Defendants' Locations ........................................................... 10

   c.   The Court Should Authorize Plaintiffs' Proposed Notice to Putative Members of the
       Collective ...................................................................................................................... 11

       1.   Plaintiffs' Proposed Notice Is Accurate, Neutral, and Informative .............................. 12

       2.   Multiple Methods of Distribution and a Reminder are Necessary to Provide Effective
           Notice of the Lawsuit.................................................................................................... 12

       3.   Notice Should Issue to All Putative Members of the Collective Who Worked Within
           Three Years of the Court's Decision on Notice ........................................................... 14

       4.   The Court Should Order Defendants to Produce Names and Contact Information for
           the Proposed Collective ............................................................................................... 15

V.   CONCLUSION..................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abrams v. City of Albuquerque*,
Civ. No. 10-0872, 2013 WL 11336856 (D.N.M. Sept. 24, 2013) ........................................... 14

*Brown v. EOG Res., Inc.*,
No. 22-CV-0116, 2023 WL 2499602 (D.N.M. Mar. 14, 2023)................................................ 10

*Beukes v. Boehnke*,
No. 24-cv-828, 2024 WL 4380815 (D. Minn. Oct. 3, 2024)................................................... 14

*Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo County*,
310 F.R.D. 631 (D.N.M. 2015)................................................................................................. 6

*Calvillo v. Bull Rogers, Inc.*,
267 F. Supp. 3d 1307 (D.N.M. 2017) .......................................................................... 12, 13, 15

*Compere v. Nusret Miami, LLC*,
28 F.4th 1180 (11th Cir. 2022) ................................................................................................. 8

*Felps v. Mewbourne Oil Co., Inc.*,
460 F. Supp. 3d 1232 (D.N.M. 2020) ......................................................................... 12, 13, 15

*Fernandez v. Clean House, LLC*,
883 F.3d 1296 (10th Cir. 2018) .............................................................................................. 15

*Flynn v. Colonial Mgmt. Grp.*,
No. 1:23-CV-00128-MIS-SCY, 2023 WL 7165194 (D.N.M. Oct. 31, 2023)................... 12, 13

*Foster v. Nova Hardbanding, LLC*,
No. CV 15-1047 CG/LAM, 2016 WL 4492829 (D.N.M. Apr. 20, 2016)............................... 14

*Guarriello v. Asnani*,
517 F. Supp. 3d 1164 (D.N.M. 2021) ......................................................................... 12, 13, 15

*Heller v. Curaleaf Holdings, Inc.*,
No. 22 CV 1617, 2024 WL 3201207 (N.D. Ill. June 27, 2024)................................................ 9

*Hoffman-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989).......................................................................................... 5, 6, 11, 12

*In re Chipotle Mexican Grill, Inc.*,
No. 17-1028, 2017 WL 4054144 (10th Cir. Mar. 27, 2017)..................................................... 6

*Jackson v. Powersat Commc'ns (USA) LP*,
 No. 2:20-CV-486 KRS/GJF, 2021 WL 2953129 (D.N.M. July 14, 2021) ........................ 13, 15

*Landry v. Swire Oilfield Servs., L.L.C.*,
 252 F. Supp. 3d 1079 (D.N.M. 2017) ............................................................................... passim

*McCloud v. Clinton Energy Grp., L.L.C.*,
 No. 7:14-CV-120, 2015 WL 737024 (W.D. Tex. Feb. 20, 2015)........................................ 7, 10

*Mraz v. Aetna Life Ins. Co.*,
 2014 WL 5018862 (M.D. Pa. Oct. 7, 2014) .......................................................................... 14

*Pogue v. Chisholm Energy Operating, LLC*,
 No. 2:20-cv-00580, 2021 WL 5861184 (D.N.M. Dec. 10, 2021) ........................................... 13

*Rivera v. CHSPSC, LLC*,
 No. 2:23-cv-00336, 2024 WL 3509701 (D.N.M. July 23, 2024) ............................. 5, 6, 10, 12

*Thiessen v. Gen. Elec. Cap. Corp.*,
 267 F.3d 1095 (10th Cir. 2001) ............................................................................... 5, 6, 7, 8

*Tyson Foods, Inc. v. Bouaphakeo*,
 577 U.S. 442 (2016).................................................................................................................. 6

*Wai Man Tom v. Hosp. Ventures LLC*,
 980 F.3d 1027 (4th Cir. 2020) .................................................................................................. 8

*West v. Bam! Pizza Mgmt., Inc.*,
 No. 1:22-CV-00209-DHU-JHR, 2023 WL 346309 (D.N.M. Jan. 20, 2023) .......................... 12

## Statutes

29 U.S.C. § 203(m)(2)(B) ............................................................................................. 1, 4, 7, 9

29 U.S.C. § 216(b) ............................................................................................................... 2, 5

29 U.S.C. § 255...................................................................................................................... 14

29 U.S.C. § 621........................................................................................................................ 5

29 U.S.C. § 626........................................................................................................................ 6

## Rules

29 C.F.R. § 531.32(a)............................................................................................................ 1, 8

## I.    INTRODUCTION

Plaintiffs are current and former "budtenders" employed by Defendants, High Horse Cannabis Company ("High Horse"). *See* Plaintiff's Complaint ("Complaint") ¶ 1, ECF No. 1; Declaration of Deenay Ochoa ("Ochoa Decl.") ¶¶ 4–6, attached as Exh. A; Declaration of Adrian Orona ("Orona Decl.") ¶¶ 4–6, attached as Exh. B; Declaration of Juan Villagomez ("Villagomez Decl.") ¶¶ 4–6, attached as Exh. C. "Budtenders"—a portmanteau of the words "bud" and "bartender"—are employees responsible for assisting customers in their purchases of cannabis at Defendants' retail dispensaries. *E.g.*, Ochoa Decl. ¶ 6–7. In this role, budtenders receive tips from customers. Ochoa, Orona, Villagomez Decls. ¶ 9.

Under the Fair Labor Standards Act (FLSA), "[a]n employer may not keep tips received by its employees for any purposes." 29 U.S.C. § 203(m)(2)(B). Nevertheless, Defendants, by their own policy and admission, require budtenders to forfeit "money that [customers] may consider to be tips," so that Defendants can use that money for their own purposes. *High Horse Cannabis Company - Policy Regarding Money Left Behind by Patients* ("Tip Policy"), Defendant's Initial Disclosures ("DEF") 0000001, attached as Exhibit D. A tip, however, is "a sum presented by a customer as a gift or gratuity in recognition of some service performed," 29 C.F.R. § 531.32(a), so if customers provide sums that they "consider to be tips" in order to "reward good service," then those sums are tips—regardless of any declaration that cannabis dispensing is "not a tipped industry" or *post hoc* attempt to reclassify these sums as "donations." Tip Policy, Exh. D; Defs.' Answer ("Answer") ¶¶ 25, 27, ECF No. 14.

Because Defendants' Tip Policy and their actual tip practices wherein they require budtenders to hand over all tips they receive violate the FLSA on its face, and because Plaintiffs have presented substantial allegations—supported by declarations and Defendants' own

admissions and policies—that Defendants retain budtenders' tips at all High Horse locations in violation of the FLSA, Plaintiffs respectfully request that the Court authorize that notice be sent to a putative collective of current and former budtenders who have worked at any High Horse retail location within three years of the date the Court approves notice in this matter, in accordance with the FLSA's collective action mechanism. 29 U.S.C. § 216(b).

## II.    FACTUAL BACKGROUND

Plaintiffs Ochoa, Orona, and Villagomez previously worked for Defendants as budtenders. Ochoa, Orona, Villagomez Decls. ¶¶ 1, 4. Budtenders work as frontline retail employees in Defendants' cannabis dispensaries, processing transactions, advising customers on what cannabis products to purchase, educating customers on various cannabis products and cannabis use more broadly, and engaging in other customer-facing work to facilitate customers' purchase of cannabis from Defendants. *Id.*

Currently, Defendants own and operate three retail stores in New Mexico, one in Chaparral, and two in Las Cruces. Ochoa, Orona, Villagomez Decls. ¶ 2. Defendants also own and operate a manufacturing and distribution facility in Las Cruces. Ochoa, Orona, Villagomez Decls. ¶ 2. In addition, Defendants previously owned and operated a retail location in Hobbes, New Mexico, which has since closed. Ochoa, Orona, Villagomez Decls. ¶ 2. Plaintiff Ochoa worked at the High Horse retail store located at 545 South County Line, Chaparral, New Mexico 88081. Ochoa Decl. ¶ 3. Plaintiff Orona worked at the retail store located at 580 South Valley Drive, Suite 300 in Las Cruces, New Mexico, as well as the retail store located at 1685 North Main Street, Las Cruces, New Mexico 88001 Orona Decl. ¶¶ 3, 5. Plaintiff Villagomez worked at the retail store located at 545 South County Line, Chaparral, New Mexico 88081. Villagomez Decl. ¶3.

Budtenders may be sent to fill in at stores other than their assigned location, when those

stores were in need of staff. Ochoa, Orona, Villagomez Decls. ¶ 5; *see also* Answer ¶ 29, ECF No. 14 ("Defendants admit that High Horse employees may be required to work at more than one dispensary location."). Additionally, Defendants employed a single Human Resources Manager for all of their locations, and centrally set their pay, tip, and other personnel policies for all locations. Ochoa, Orona, Villagomez Decls. ¶¶ 16–17; *see also* Complaint ¶ 30, ECF No. 1 & Answer ¶ 30, ECF No. 14; Answer ¶¶ 17–21, 25–29, ECF No. 14 (discussing policies that apply to all High Horse employees at all locations).

In their role, budtenders often receive tips from customers. Ochoa, Orona, Villagomez Decls. ¶¶ 9–11. These amounts are provided by customers at the customers' discretion and related to customers' satisfaction with the budtender assisting them in their purchase. Ochoa, Orona, Villagomez Decls. ¶¶ 10–11. Indeed, Defendants themselves acknowledge that their customers "frequently attempt to reward good service with tips." Tip Policy, Exh. D. Defendants, however, retain these tips for themselves and use them for their own purposes. Ochoa, Orona, Villagomez Decls. ¶¶ 12–14. As outlined in the Tip Policy, sums that customers "may consider to be tips are collected" by Defendants, and used either to "assist[] [customers] who do not have enough money to pay for their entire order," or to support "High Horse Gives Back projects," an "organized effort to donate or otherwise contribute to community projects." Tip Policy, Exh. D.

Plaintiffs' experience is consistent with this policy. At all times material to this action, customers have provided tips to budtenders by either placing the tips into a so-called "Karma Jar" on the sales counter, or by providing them directly to budtenders. Ochoa, Orona, Villagomez Decls. ¶ 14. When customers provided budtenders tips directly, the budtenders would be required to surrender those tips into the "Karma Jar" or another receptacle, or directly to a manager. Ochoa, Orona, Villagomez Decls. ¶ 14. Regardless of the particular mechanism, budtenders were required

3

to surrender all of their tips to Defendants, or face discipline. Ochoa, Orona, Villagomez Decls. ¶¶ 13–14; Answer ¶ 25, ECF No. 14. Defendants then used these tips in service of their own ends, and never disclosed to budtenders the ultimate disposition of these tips. Ochoa, Orona, Villagomez Decls. ¶ 15; Answer ¶ 27, ECF No. 14.

## III.    PROCEDURAL BACKGROUND

Plaintiffs filed the initial Complaint in this putative collective and class action on June 12, 2024, alleging that Defendants had improperly retained and commandeered their tips. Complaint ¶ 1, ECF No. 1. Defendants filed their answer on August 22, 2024, Answer, ECF No. 14, and the Court issued its Initial Scheduling Order on August 23, 2024, ECF No. 15. The Parties met and conferred under Fed. R. Civ. P. 26(f) on September 30, 2024, and subsequently exchanged initial disclosures. Plaintiffs filed the Parties' Joint Status Report on October 21, 2024. ECF No. 23. Throughout the course of this litigation, Plaintiffs have filed consent forms for additional opt-in plaintiffs, and the number of total plaintiffs in this case now sits at 23. *See* ECF Nos. 3, 10–11, 20.

## IV.    ARGUMENT

Under the FLSA, "[a]n employer may not keep tips received by its employees for any purposes." 29 U.S.C. § 203(m)(2)(B). Nevertheless, Defendants, by their own policy and admission, require budtenders at all of their locations to forfeit "money that [customers] may consider to be tips," and Defendants then use that money for their own purposes. Tip Policy, Exh. D. Additionally, as Plaintiffs allege in their Complaint and substantiate via declarations, Defendants adhere to this policy, actually retaining any tips that Plaintiffs receive across their retail locations, and using those tips for Defendants' own purposes. Complaint ¶¶ 19–30, ECF No.1; Ochoa, Orona, Villagomez Decls. ¶¶ 12–15. While Defendants assert that any such amounts are not tips but rather "donations," *see Answer* ¶¶ 22–23, ECF No. 14, this is a factual contention, and

4

inappropriate for consideration during a plaintiff's initial request for notice. *See Rivera v. CHSPSC, LLC*, No. 2:23-cv-00336, 2024 WL 3509701, at *2–3 (D.N.M. July 23, 2024) (explaining that the court "does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims at the notice stage"). Rather, plaintiffs must produce "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" that violated the FLSA," *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), along with a "reasonable basis to conclude that the same policy applies to multiple locations of the same company," *Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1125 (D.N.M. 2017). Because Plaintiffs have carried their burden, and because both the form and substance of Plaintiffs' proposed notice are acceptable, notice should issue.

a.    **The FLSA's Collective Action Mechanism**

The FLSA provides for "collective actions," which permit plaintiffs to join "themselves and other employees similarly situated" in actions alleging violations of the FLSA. 29 U.S.C. § 216(b). Such actions are opt-in, however, and similarly situated plaintiffs who wish to join must file a consent form with the court in order to do so. *Id.* The FLSA neither defines the term "similarly situated" nor prescribes any procedures for identifying the population of "similarly situated" employees and facilitating their opting-into the action. Nevertheless, the Supreme Court has explained that "once an [FLSA] action is filed, the [district] court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The Tenth Circuit has indicated its preference for the "two-step" approach. *Thiessen* 267 F.3d at 1105.[1]

---

[1] *Thiessen* involved a collective action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, rather than under the FLSA, 267 F.3d at 1102. However, the ADEA

Under the "two-step" approach, "a court typically makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" *Id.* at 1102. At this stage, plaintiffs' burden is "light and lenient," *Rivera*, 2024 WL 3509701, at *2–3, and they must show "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" that violated the FLSA, *Thiessen*, 267 F.3d at 1102. If the court finds that plaintiffs have made this showing, it will authorize that notice be sent to putative members of the collective, advising them of the lawsuit and their right to join. *Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo County*, 310 F.R.D. 631, 662–63 (D.N.M. 2015). Such "accurate and timely notice concerning the pendency of the collective action" is necessary to reap the benefits of a collective action, which include "the pooling of resources" and the "efficient resolution in one proceeding of common issues of law and fact." *Hoffman-La Roche*, 493 U.S. at 170.[2] Because Plaintiffs have pointed to Defendant's own Tip Policy, Exhibit D, which applies to all of its stores, and have also provided declarations from budtenders at each of Defendants' stores establishing that they were all subject to the same common policy and practice of Defendants retaining and commandeering their tips, Ochoa, Orona, Villagomez Decls. ¶¶ 9–17, Plaintiffs have easily met their burden at this stage and respectfully request that this Court issue the notices attached to this memorandum as Exhibits E–G.

---

expressly incorporates the FLSA's collective action provision, *see* 29 U.S.C. § 626(b), and both the Supreme Court and the Tenth Circuit discuss ADEA and FLSA collective actions interchangeably, *see, e.g.*, *Hoffman-La Roche*, 493 U.S. at 173; *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016); *Thiessen*, 267 F.3d at 1102; *In re Chipotle Mexican Grill, Inc.*, No. 17-1028, 2017 WL 4054144, at *2 (10th Cir. Mar. 27, 2017).

[2] The second step then occurs at the close of discovery, and is often prompted by a defendant's motion for a finding that the collective is not, in fact, similarly situated. *Thiessen*, 267 F.3d at 1102. At this stage, the court will apply a "stricter standard" to determine whether the now-joined members of the collective are indeed similarly situated. *Id.*

     **b.**     **The Evidence Plainly Establishes that Defendants Maintained a Common Policy and Practice of Retaining Budtender Tips in Violation of the FLSA**

At the notice stage, Plaintiffs must only provide "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" that violated the FLSA. *Thiessen*, 267 F.3d at 1105. Where a group of plaintiffs seeks notice for more than one of a company's locations, they must only provide a "reasonable basis to conclude that the same policy applies to multiple locations of the same company." *Landry*, 252 F. Supp. 3d at 1125 (quoting *McCloud v. Clinton Energy Grp., L.L.C.*, No. 7:14-CV-120, 2015 WL 737024, at *8 (W.D. Tex. Feb. 20, 2015)). Here, because Plaintiffs provide three declarations averring that their tips were retained in violation of the FLSA at each of Defendants' locations, and because Defendants' own admissions and policies indicate that this illegal policy applied to each of Defendants' locations, Plaintiffs have met their burden.

     *1.*     *Notice is Appropriate because Defendants' Tipping Policy Facially Violates the FLSA and Applies to All of Defendants' Locations*

As an initial matter, Defendants' tip policy facially violates the FLSA. The FLSA prohibits an employer from "keep[ing] tips received by its employees for any purposes." 29 U.S.C. § 203(m)(2)(B). In relevant part, the tip policy reads as follows:

> "Understanding that patients[3] frequently attempt to reward good service with tips, High Horse has the following practice.
>
> Money collected that patients may consider to be tips are collected and used for two purposes:
>
>     1. Assisting patients who do not have enough money to pay for their entire order.
>
>     2. The remaining balance is used for High Horse Gives Back projects. HHGB is our organized effort to donate or otherwise contribute to community projects.

---

[3] High Horse refers to its customers as "patients." Ochoa, Orona, Villagomez Decls. ¶¶ 8.

Tip Policy, Exh. D.

Under 29 C.F.R. § 531.32(a), "[a] tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer. . . . Whether a tip is to be given, and its amount, are matters determined solely by the customer." As such, any amount provided by a customer "to reward good service," and which the customer "consider[s] to be [a] tip[]," **is a tip**, and cannot be kept by an employer under the FLSA. Tip Policy, Exh. D; 29 U.S.C. § 203(m)(2)(B) *See also Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1038 (4th Cir. 2020) (explaining that the inquiry into whether an amount is a tip turns on whether the amount is a "gift or gratuity" in recognition of service, and whether the customer "decided whether and how much to pay" (citing 29 C.F.R. § 531.32(a))); *Compere v. Nusret Miami, LLC*, 28 F.4th 1180, 1186 (11th Cir. 2022) (same).

Defendants' Tip Policy plainly runs afoul of 29 C.F.R. § 531.32(a), and purports to apply to the "High Horse Cannabis Company" writ large, rather than to any particular location. Tip Policy, Exh. D; *see also* Answer ¶ 30, ECF No. 14 & Complaint ¶ 30, ECF No. 1 (admitting that Defendants "maintain[] . . . common policies across [their] locations"). Thus, based on the Tip Policy alone, Plaintiffs have provided "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" that violated the FLSA across all of High Horse's locations. *Thiessen*, 267 F.3d at 1105. Plaintiffs' declarations and Defendants' other admissions, discussed further below, further underscore that notice is appropriate in this case.

### 2. *Plaintiffs' Declarations and Defendants' Admissions Support Substantial Allegations that Defendants Improperly Retained and Commandeered Plaintiffs' Tips in Violation of the FLSA*

Plaintiffs have provided substantial allegations, supported by three declarations, that Defendants unlawfully kept their tips. Plaintiffs state in their declarations that, when customers

themselves deposited tips into a "Karma Jar," that tip money was not distributed to budtenders. Ochoa, Orona, Villagomez Decls. ¶¶ 12–14. Rather, it was commandeered by Defendants, who, among other things, gave it to other customers to subsidize their purchases, used it to purchase food or other supplies for the retail location, directed it to a charity under Defendants' control, or otherwise directed it towards Defendants' ends. Ochoa, Orona, Villagomez Decls. ¶¶ 12–14. Similarly, when Plaintiffs received tips directly from customers, they were required to place them into the "Karma Jars" or another receptacle, after which the tips were taken from them and directed towards Defendants' ends. Ochoa, Orona, Villagomez Decls. ¶¶ 12–14. None of the tips were ever provided to Plaintiffs. Ochoa, Orona, Villagomez Decls. ¶¶ 12–14.

Such retention and commandeering of tips is a clear violation of the FLSA's command that employers may not keep their employees' tips "for any purpose." 29 U.S.C. § 203(m)(2)(B). Indeed, the Northern District of Illinois recently approved notice to a putative collective of budtenders under similar circumstances, where the plaintiffs provided declarations averring that their managers had, among other things, retained Plaintiffs' tips in order to donate them to charity. *See Heller v. Curaleaf Holdings, Inc.*, No. 22 CV 1617, 2024 WL 3201207, at *2 (N.D. Ill. June 27, 2024) ("[M]anagement directed employees to turn over . . . tip money to the store so it could be donated to charity."). Because the budtenders here have provided evidence of the same conduct, they have plainly established substantial allegations of a violation of the FLSA.

Defendants themselves admit that it was policy and practice at their retail locations to "gather[] money" from customers that was surplus to the underlying retail transaction. *See Answer* ¶¶ 22–23, ECF No. 14. Defendants' only contention is that this money was not composed of tips. *Id.* ¶¶ 23, 25 ("Defendant[s] deny that donations collected were tips."). Setting aside the fact that Defendants' own Tip Policy undercuts this position, *see* Exh. D, such a factual dispute is

9

immaterial to the question of notice, because the court "does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims at the notice stage." *Rivera v. CHSPSC, LLC*, No. 2:23-cv-00336, 2024 WL 3509701, at *2–3 (D.N.M. July 23, 2024).

At this point, the Parties are in agreement that customers at High Horse's retail locations provided surplus sums of money when purchasing cannabis products. *Compare* Complaint ¶ 23, ECF No. 1 (alleging that "Defendants have not indicated to Plaintiffs what the tips were ultimately used for"), *with* Answer, ECF No. 14 ¶ 23 (asserting that "[t]he money gathered was not tips"). Whether these sums should be considered donations instead of tips is not a matter to consider at this phase of litigation. Instead, it is sufficient that Plaintiffs have substantially alleged that the sums are tips and that, across High Horse locations, Defendants retained those sums. *See* Ochoa, Orona, Villagomez Decls. ¶¶ 9–13; *Brown v. EOG Res., Inc.*, No. 22-CV-0116, 2023 WL 2499602, at *4 (D.N.M. Mar. 14, 2023) (explaining that, in making its notice decision, the Court was "leaving aside the factual disagreements" and instead "direct[ing] its attention to the plaintiffs' submissions to determine the allegations are 'substantial'"). Plaintiffs have met their "light and lenient" burden of providing "substantial" allegations that Defendants retained tips in violation of the FLSA. *Rivera*, 2024 WL 3509701, at *2–3.

### 3. Plaintiffs have Provided a Reasonable Basis to Conclude that Defendants' Policy Applied Equally across Defendants' Locations

Plaintiffs seek notice to a putative collective of budtenders at each of High Horse's retail locations. In order for notice to issue to multiple locations, Plaintiffs need only provide a "reasonable basis to conclude that the same policy applies to multiple locations of the same company." *Landry*, 252 F. Supp. 3d at 1125 (quoting *McCloud*, 2015 WL 737024, at *8). Plaintiffs' own allegations, in addition to Defendants' admissions, provide substantial allegations supporting a reasonable basis to conclude that the policy was in effect at all High Horse locations.

10

Plaintiffs have provided declarations from budtenders who worked at each of High Horse's existing three locations, averring that their tips were retained and commandeered. *See* Ochoa, Orona, Villagomez Decls. ¶¶ 12–15. Plaintiffs also aver that, at times, they were required to work at different High Horse locations and encountered the same policies and practices of tip retention and commandeering at these different locations. Ochoa, Orona, Villagomez Decls. ¶¶ 5, 12–15. Furthermore, Defendants admit in their answer that they utilize a single Human Resources Manager across all of their locations, and maintain common records and policies across all of their locations. Answer ¶ 30, ECF No. 14 & Complaint ¶ 30, ECF No. 1. Finally, Defendants in their Answer repeatedly state that "[e]mployees working regular shifts at High Horse dispensaries are prohibited from accepting tips," without distinguishing between locations, and Defendants' Tip Policy purports to apply to the company writ large. *See* Answer ¶¶ 18–24, 26, ECF No. 14; Tip Policy, Exh. D. All of this provides a more-than-reasonable basis to conclude that Defendants' policy of retaining and commandeering Plaintiffs' tips "applie[d] to multiple locations of the same company." *Landry*, 252 F. Supp. 3d at 1125.

      **c.**    **The Court Should Authorize Plaintiffs' Proposed Notice to Putative Members of the Collective**

Plaintiffs respectfully request that the Court authorize notice to be sent to putative members of the collective via U.S. Mail, email, and text message. Plaintiffs also request that a reminder notice be sent 30 days after the sending of the initial notice. As discussed above, Plaintiffs propose sending this notice to all of Defendants' current and previous budtenders who have worked for High Horse within three years of the date the Court approves notice in this matter. Such notice will further the FLSA's "broad remedial goal," further judicial efficiency, and best-protect the rights of putative members of the collective." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

### 1.    *Plaintiffs' Proposed Notice Is Accurate, Neutral, and Informative*

Plaintiffs request that the Court authorize notice to be sent to all individuals who meet the following definition: All employees of High Horse employed as budtenders within three years of the date the Court approves notice in this matter. Plaintiffs' proposed Mail/Email Notice and Consent to Join form, Text Notice, and Reminder Notice, attached hereto as Exhibits E–G, describe who is eligible to join the collective and provide putative plaintiffs with an accurate description of the lawsuit and their rights. *See Hoffmann-La Roche*, 493 U.S. at 172 (requiring notice be "timely, accurate, and informative"). As such, they should be approved.

Additionally, Plaintiffs request a 60-day opt-in period from the date that the notice is issued. This is a standard notice period length—indeed courts, regularly approve longer opt-in periods—and should be approved here. *See, e.g.*, *Rivera*, 2024 WL 3509701, at *1 (approving 60-day opt-in period); *Flynn v. Colonial Mgmt. Grp.*, No. 1:23-CV-00128-MIS-SCY, 2023 WL 7165194, at *13 (D.N.M. Oct. 31, 2023) (same); *West v. Bam! Pizza Mgmt., Inc.*, No. 1:22-CV-00209-DHU-JHR, 2023 WL 346309, at *4 (D.N.M. Jan. 20, 2023) (same); *Guarriello v. Asnani*, 517 F. Supp. 3d 1164, 1177 (D.N.M. 2021) (approving 90-day opt-in period).

### 2.    *Multiple Methods of Distribution and a Reminder are Necessary to Provide Effective Notice of the Lawsuit*

Plaintiffs ask that the Court authorize that notice be sent via U.S. Mail, e-mail, and text message. Courts within the District of New Mexico "routinely approve notice by mail, email message, *and* text message." *Felps v. Mewbourne Oil Co., Inc.*, 460 F. Supp. 3d 1232, 1241 (D.N.M. 2020) (emphasis in original) (collecting cases). Indeed, courts have noted that "notice by email and text is reasonable in today's mobile society," and that such methods "may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." *Id.* (quoting *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017)). Or, as

another court noted, the "efficacy and common usage" of email and text message support their use as channels for notice, especially because, "given the amount of junk mail that people receive, email and text message likely are more effective methods for communicating with potential [collective] members than traditional, first-class mail." *Landry*, 252 F. Supp. 3d at 1129–30. In 2024, providing notice through electronic means is not a controversial proposition, and "the law regarding notice by text message is 'on Plaintiff[s'] side.'" *Felps*, 460 F. Supp. 3d at 1241 (quoting *Calvillo*, 267 F. Supp. 3d at 1315).

Plaintiffs also request that the Court authorize a reminder notice to be sent via the same methods to putative collective members who have not yet returned a Consent to Join form halfway through the notice period—*i.e.*, 30 days after the issuance of the initial notice. Reminder notices are common in this Circuit and do not cause the Defendants any prejudice. *See, e.g.*, *Guarriello*, 517 F. Supp. 3d at 1177 (authorizing 90-day notice period with 45-day reminder); *Jackson v. Powersat Commc'ns (USA) LP*, No. 2:20-CV-486 KRS/GJF, 2021 WL 2953129, at *6 (D.N.M. July 14, 2021) (same); *Landry*, 252 F. Supp. 3d at 1130 (approving reminder 30 days into notice period); *Flynn*, 2023 WL 7165194, at *15 (same); *Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-cv-00580, 2021 WL 5861184, at *9 (D.N.M. Dec. 10, 2021) (authorizing reminder when 30 days remaining in notice period). Indeed, reminders "serve[] the FLSA's broad remedial purpose by ensuring that as many potential plaintiffs as possible are informed of the collective action and their right to opt-in," in light of the fact that an "individual is not part of the [collective] unless he or she opts-in." *Landry*, 252 F. Supp. 3d at 1130 (internal alterations and quotation marks omitted).

Plaintiffs also request that the Court authorize notice recipients to complete their Consent to Join forms via the electronic signature service DocuSign or equivalent electronic service. As

courts have observed, "we live in a time when all manner of commercial transactions are routinely cemented by electronic submission," and "courts have [thus] approved the use of online, electronic signature opt-in forms." *Landry*, 252 F. Supp. 3d at 1130 (quoting *Mraz v. Aetna Life Ins. Co.*, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014), and collecting cases). Allowing the use of DocuSign will further the FLSA's "broad remedial purpose" and preserve putative plaintiffs' rights by facilitating the return of consent forms using a widely-adopted electronic signature service. *See, e.g.*, *Beukes v. Boehnke*, No. 24-cv-828, 2024 WL 4380815, at *7 (D. Minn. Oct. 3, 2024) (approving the use of DocuSign for FLSA collective and collecting legal contexts in which it is used).

### 3.    *Notice Should Issue to All Putative Members of the Collective Who Worked Within Three Years of the Court's Decision on Notice*

As set forth above, Plaintiffs respectfully request that this Court authorize notice to be sent to budtenders who have worked at any High Horse location within three years of the date the Court approves notice in this matter. The FLSA has a three-year statute of limitations for willful violations, running from the date that a plaintiff's consent form is filed with the court. 29 U.S.C. § 255. Plaintiffs have alleged in their Complaint that Defendants' violation of the FLSA was willful. Complaint, ¶¶ 34, 50–51, ECF No. 1. Accordingly, it is appropriate to send notice to putative members of the collective who have worked three years prior to the Court's decision on this motion. *See Abrams v. City of Albuquerque*, Civ. No. 10-0872, 2013 WL 11336856, at *6 (D.N.M. Sept. 24, 2013) ("[T]he Court notes that in conditionally certifying a collective action under the FLSA, district courts generally apply the longer three-year limitations period for willful violations.") (collecting cases). *Foster v. Nova Hardbanding, LLC*, No. CV 15-1047 CG/LAM, 2016 WL 4492829, at *4 n.3 (D.N.M. Apr. 20, 2016) (in determining bounds of putative collective, explaining that "Plaintiff alleges that Defendant Nova's conduct was willful, invoking a three year

14

statute of limitations. As a result, the Court will use a three year statute of limitations in this case")

(internal citations omitted). This is in line with the Tenth Circuit's construction of a defendant's

challenge to willfulness as an affirmative, statute-of-limitations defense, *Fernandez v. Clean*

*House, LLC*, 883 F.3d 1296, 1298–99 (10th Cir. 2018), which should not be considered at the

notice stage, *see Calvalillo*, 267 F. Supp. 3d at 1311 (explaining that, under the two-step process,

affirmative defenses are considered at the second stage).

> **4.      *The Court Should Order Defendants to Produce Names and Contact Information for the Proposed Collective***

To facilitate effective notice, Plaintiffs ask that the Court order Defendants to produce

names and contact information for all putative collective members within 14 days of the Court's

order granting this motion. This information should include, at a minimum: (1) names; (2) last

known mailing address; (3) last known cell phone numbers; (4) last known personal email

addresses; (5) dates of employment; and, if applicable, (6) employee identification numbers.

Production of such information is standard in FLSA cases in this Circuit because it facilitates

locating collective members and ensuring they receive timely notice. *See, e.g.*, *Felps*, 460

F. Supp. 3d at 1242 (ordering the production of names, mailing addresses, cell phone numbers,

and employment dates); *Guarriello*, 517 F. Supp. 3d at 1176 (same); *Jackson*, 2021 WL 2953129,

at *6 (same).

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) conditionally

certify this case as a collective action; (2) direct the issuance of the proposed mail/email notice

and Consent to Join form, Exhibit E; reminder notice, Exhibit F; and text notice, Exhibit G, to the

putative collective by mail, email, and text message; and (3) order Defendants to produce a data

file containing names, last known mailing address, last known cell phone numbers, last known

personal email addresses, dates of employment; and employee identification numbers.

Dated: October 29, 2024                          Respectfully submitted,

                                                 /s/ Molly A. Elkin
                                                 Molly A. Elkin (*Pro Hac Vice*)
                                                 Patrick J. Miller-Bartley (*Pro Hac Vice*)
                                                 McGILLIVARY STEELE ELKIN LLP
                                                 1101 Vermont Ave., NW
                                                 Suite 1000
                                                 Washington, DC 20005
                                                 Telephone: (202) 833-8855
                                                 Fax: (202) 452-1090
                                                 mae@mselaborlaw.com
                                                 pmb@mselaborlaw.com

                                                 /s/ Stephen Curtice
                                                 Shane Youtz
                                                 Stephen Curtice
                                                 Youtz & Valdez PC
                                                 900 Gold Ave. SW
                                                 Albuquerque, NM 87102
                                                 Telephone: (505) 244-1200
                                                 shane@youtzvaldez.com
                                                 stephen@youtzvaldez.com

                                                 *Attorneys for Plaintiffs*