**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

|  |  |
|---|---|
| DEENAY OCHOA, ADRIAN ORONA, JUAN VILLAGOMEZ, and all others similarly situated, | |
| Plaintiffs, | 2:24-cv-00597-KWR-KRS |
| v. | |
| RUBEN ISRAEL AGUILAR, HIGH HORSE INVESTMENT LLC, and HH ADMINISTRATION LLC, | |
| Defendants. | |

**JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AND**
**STIPULATION OF DISMISSAL**

## I.    INTRODUCTION

Subject to final Court approval, the Parties have settled the claims of Named Plaintiffs Deenay Ochoa, Adrian Orona, Juan Villagomez, the 20 Opt-In Plaintiffs, and the Rule 23 Class certified for settlement purposes only (collectively, "Plaintiffs") for $225,000.00. The settlement resolves all claims in the lawsuit. Specifically, it resolves Plaintiffs' allegations that Defendants Ruben Israel Aguilar, High Horse Investments LLC, and HH Administration LLC ("Defendants") failed to comply with the Fair Labor Standards Act, 29 U.S.C. ¶ 201, *et seq.* ("FLSA"), the New Mexico Minimum Wage Act ("NMMWA"), and New Mexico common law by unlawfully retaining Plaintiffs' tips.

In advance of the July 28, 2025, Fairness Hearing, and consistent with Paragraphs 3.1.g and 9.2-9.3 of the Settlement Agreement ("Settlement" or "Agreement"), Dkt. 42-2, the Parties submit this Joint Motion for Final Approval of Settlement and Stipulation of Dismissal. As set

forth below, the Settlement satisfies all criteria for final approval. Accordingly, the Parties respectfully request that the Court issue an Order approving the and reflecting that: (1) a bona fide legal dispute exists between the Parties as to whether Settlement Class Members (as defined in Section V, n.2 below) are owed any wages, redistributed tips, or statutory damages; (2) the Settlement Agreement, Dkt. 42-2, including all information contained in the Settlement Notice, is approved as fair, reasonable, adequate, and binding on all Settlement Class Members who have not timely opted out of the Settlement; (3) the procedure for Defendants to pay the Settlement Amount along with the employer's share of payroll taxes into the Qualified Settlement Fund ("QSF") as described in Paragraphs 1.7, 3.1j, 10.3-10.5, and 13.2 of the Agreement is approved; (4) the Administration of the QSF as described in Paragraphs 10 through 13 of the Agreement is approved; (5) the claims of the Named Plaintiffs, Opt-In Plaintiffs, and the Class Members who have not timely opted out of the Settlement are dismissed with prejudice; (6) the Attorneys' Fees and Litigation Expenses set forth in the Agreement and supported by the contemporaneously-filed Petition for Attorneys' Fees and Litigation Expenses are approved; (7) the Service Awards set forth in Paragraph 11.5 of the Agreement are approved; (8) the Settlement Administration Costs to the Settlement Administrator in an amount not to exceed $9,090.00 as set forth in the Paragraph 11.3 of the Agreement are approved; (9) a class as defined in the Parties' Agreement is certified for settlement purposes only pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; and (10) jurisdiction over the interpretation and implementation of the Agreement will be retained by the Court as set forth in Paragraph 16.1 of the Agreement. A proposed Order is attached as Exhibit A

## II.    THE COURT'S PRELIMINARY APPROVAL ORDER

On April 17, 2025, the Parties submitted a Joint Motion for Preliminary Approval of FLSA and Class Action Settlement, which set forth a detailed factual and procedural history of this

litigation. Dkt 42. The Court granted the Parties' Motion on April 21, 2025. Dkt. 43. Specifically, the Court issued an Order preliminarily approving the Settlement Agreement, ordering issuance of settlement Notice to Class Members, appointing Rust Consulting, Inc. as the settlement administrator, approving a class for settlement purposes only pursuant to Rule 23(e), appointing Deenay Ochoa, Adrian Orona, and Juan Villagomez as Class Representatives, appointing Plaintiffs' counsel at McGillivary Steele Elkin LLP and Youtz & Valdez PC as Class Counsel, and ordering the Parties to appear for a Fairness Hearing. *Id.*

## III.    SETTLEMENT TERMS

A detailed background regarding the arm's-length settlement negotiations between the Parties, and the terms of the Settlement Agreement that resulted from those negotiations, are set forth in the Parties' Joint Motion for Preliminary Approval of FLSA and Class Action Settlement. Dkt. 42. The terms of the Settlement Agreement, Dkt. 42-2, have not changed since April 21, 2025, the date of preliminary approval of the settlement.

Pursuant to Paragraph 3.1.j of the Settlement Agreement, Defendants will deposit the Settlement Amount of $225,000.00 plus the employer's share of applicable payroll taxes into a Qualified Settlement Fund ("QSF"). Agreement ¶¶ 3.1.j, 10.5, Dkt. 42-2. This amount will comprise: (1) $134,937.84 to be allocated to the Class Representatives, Opt-In Plaintiffs, and Class Members ("Settlement Class Members"); (2) $4,500.00 to be allocated to the Class Representatives as service awards (with each Class Representative receiving $1,500.00); (3) $9,090.00 in settlement administration costs; (4) $75,000.00 in attorneys' fees; and (5) $1,472.16 in litigation expenses.[1] *Id.* ¶¶ 11.1-11.7. Within 7 days of the funding of the QSF, the Settlement

---

[1] While the settlement agreement established that Class Counsel would be reimbursed in an amount "not to exceed $2,839.33," Dkt. 42-2 ¶ 11.2, Class Counsel's ultimate expenses were less than this amount because no travel expenses will be incurred for the Fairness Hearing, which the

Administrator shall distribute the Settlement Payments to Settlement Class Members in accordance with the terms of the Agreement, Final Approval Order, and the instructions provided by Class Counsel pursuant to Paragraph 3.1.b of the Agreement regarding the settlement payments to be paid to each Settlement Class Member. *Id.* ¶¶ 12.1, 3.1.k. Of the total amounts to be paid to each Settlement Class Member, 25% will be designated as backpay and 75% will be designated as liquidated damages. *Id.* ¶ 11.8.

## IV.    ISSUANCE OF NOTICE AND RESULTS OBTAINS

On April 23, 2025, Defendants provided Rust with the names, mailing addresses, and applicable employment information for the 169 Settlement Class Members. *See* Decl. of Sara Schwermer-Sween, for Rust Consulting, Inc. ("Rust Decl.") ¶ 6, attached as Exhibit B. That same day, Class Counsel provided Rust with the point allocations and payment amounts for each Settlement Class Member. *Id.*

Rust updated the addresses by processing them through the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service to obtain the most up-to-date address available. *Id.* ¶ 7. On May 5, 2025, Rust mailed Settlement Notices to the 169 Settlement Class Members contained in the class list. *Id.* ¶ 8. Rust performed address traces on 25 Settlement Notices that were returned as undeliverable. *Id.* ¶ 9. Of the 25 traces performed, 22 more current addresses were obtained and Rust promptly remailed those Notices to the more current addresses. *Id.* Of the 22 Settlement Notices mailed to a more current address identified from the trace, three (3) Settlement Notices were returned to Rust as undeliverable a second time. As of this date, six (6) Settlement Notices remain undeliverable. *Id.*

---

Court agreed to conduct via Zoom. Dkt. 45. The $1367.17 allocated for travel costs will be reallocated to the Class Members on a pro-rata basis.

The Settlement Notice advised Settlement Class Members of their right to object to the Settlement, their right to opt-out, and their right to dispute the points and associated monetary awards allocated to them which were based on their length of employment as a budtender. *See* Settlement Notice, Dkt. 42-3; Exhibit A to Rust Decl., Dkt. 47-2. No Settlement Class Member disputed their point allocation. Rust Decl. ¶ 13. No Settlement Class Member opted out. *Id.* ¶ 12. Only a single Class Member objected to the Settlement. *See* Dkt. 46; Rust Decl. ¶¶ 11-13. Notably, this objector's primary focus is not on the tip claims at issue in this lawsuit, but on their belief that the settlement fails to compensate them sufficiently for "other significant wrongdoings that affected [the objector's] employment," including a failure to provide differential pay for working the night shift, concerns about scheduling, and alleged retaliation relating to those differential pay and scheduling concerns. Dkt. 46; Rust Decl. ¶¶ 11-13.

The overwhelmingly favorable response from the Settlement Class following a robust and effective notice period shows that the Settlement is adequate and supports final approval. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number [of objections] are received, the fact can be viewed as indicative of the adequacy of the settlement."); *see also Tennille v. W. Union Co.*, 785 F.3d 422, 437 (10th Cir. 2015) (finding that "notice satisfied due process by informing class members of several ways they could obtain information about the claims that they would be releasing if they joined the settlement"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) (holding that a "fully descriptive notice [that] is sent [by] first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process").

## V.    THE COURT SHOULD FINALLY CERTIFY A RULE 23 CLASS FOR SETTLEMENT PURPOSES

Final class certification cannot occur until after the fairness hearing. *Cisneros v. EP Wrap-It Insulation, LLC*, Civ. No. 19-500 GBW/GJF, 2022 WL 2304146, at *3 (D.N.M. June 27, 2022) ("The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposal settlement." (quoting Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment)). When a court has already certified a class, as it has here, *see* Dkt. 43, "the only information ordinarily necessary [for final approval] is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification has been granted." Fed R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment. Because no such changes have occurred in the time since the Court found that the class satisfied the Rule 23 requirements for settlement purposes, the Court should finally certify a class.[2] *See Cisneros*, 2022 WL 2304146, at *3 (finally certifying a class for settlement purposes after the Court had certified a class in granted the preliminary approval and where the class had not changed); *see also Harris v. Vector Mktg.*, No. C-08-5198, 2012 WL 381202, at *3 (N.D. Cal. Feb. 6, 2012) (finding that where a Court has previously certified a Rule 23(b)(3) class, the Court "need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable"); *Sigma Beta Xi, Inc. v. County of Riverside*, Case No. EDCV 18-1399 JGB, 2020 WL 13094025, at *6 (C.D. Cal. June

---

[2] The Rule 23 Class certified for settlement purposes comprises: The Named Plaintiffs, the Opt-In Plaintiffs, and the persons identified by Defendants on February 7, 2025, and updated on March 17, 2025 and March 21, 2025, who worked for one or more workweeks as budtenders in New Mexico at Defendants' retail store locations since the date that those store locations opened, and March 21, 2025, the date that Defendants began allowing budtenders to keep their tips. Dkt. 42.

22, 2020) (confirming a Class Certification Order when the "parties have made no changes to the proposed Settlement Class since it was certified by the Court").

## VI.    THE SETTLEMENT SHOULD BE FINALLY APPROVED

### a.    Standard for Final Settlement Approval

Court approval is required to settle both an FLSA collective action and a Rule 23 class action. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); Fed. R. Civ. P. 23(e). Due to the "overriding public interest in favor of settlement," there is a presumption in favor of approval. *See Acevedo v. Sw. Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (internal quotation marks omitted). Notably, in hybrid FLSA/Rule 23 cases like this one, because "the standard for settlement approval under Rule 23 is considerably stricter and fairly subsumes the FLSA standard, the Court will presume that a settlement approved under Rule 23 can also be approved under the FLSA." *Cisneros*, 2021 WL 2953117, at *2.

In determining whether to finally approve a settlement, the Court must consider whether a settlement is fair, reasonable, and adequate. *See Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). In determining whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Tenth Circuit also looks at the four *Rutter* factors in evaluating whether a settlement is fair, reasonable, and adequate. These four factors are:

(1)    Whether the proposed settlement was fairly and honestly negotiated;

(2)    Whether serious questions of law and fact exist; placing the ultimate outcome of the litigation in doubt;

(3)    Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)    The judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Corp.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The question of whether a proposed settlement is fair, reasonable, and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (internal quotation marks omitted). Courts consider "the judgment of counsel and the presence of good faith bargaining between the contending parties" and "have consistently refused to substitute their business judgment for that of counsel." *Id.* As set forth below, the facts and circumstances compel the conclusion that the settlement satisfies the standard for approval.

### b.  The Settlement Satisfies the Rule 23 Test for Fairness

#### i.  Rule 23(e)(2)(A): The Class Representative and Class Counsel have Adequately Represented the Class

In evaluating the adequacy of representation, courts consider whether (1) the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel have vigorously prosecuted the action on behalf of the class.

*See In re Samsung Top-load Washing Mach. Mktg., Sales Prac. & Prods. Liab. Litig.*, MDL Case No. 17-ml-2792-D, 2020 WL 2616711, at *3 (W.D. Okla. May 22, 2020). This factor focuses on the "actual performance of counsel acting on behalf of the class." *Montgomery v. Continental Intermodal Group-Trucking, LLC*, No. 19-940 GJF, 2021 WL 1339305, at *4 (D.N.M. Apr. 9, 2021) (quoting Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment).

Here, Class Representatives Ochoa, Orona, and Villagomez have the same interests as the rest of the Class: they all seek to recover tips they earned but which were retained by Defendants. Second, the Class Representatives and Class Counsel have vigorously prosecuted this action. Plaintiffs Ochoa, Orona, and Villagomez have actively participated in all steps of the litigation and its settlement, providing Class Counsel with extensive assistance investigating Class Members' claims, evaluating Defendants' tip and other financial records, along with further guidance and, ultimately, settlement endorsement, throughout the process. *See* Declaration of Molly A. Elkin ("Elkin Decl.") ¶¶ 22-23, Dkt. 42-1; *see Cisneros*, 2022 WL 2304146, at *4 (finding that Named Plaintiff actively participated in the litigation by assisting Class Counsel in investigating claims, responding to discovery, and attending and assisting with the settlement conference). Moreover, Class Counsel are experienced in handling wage and hour class and collective action cases nationwide. Elkin Decl. ¶¶ 1-17, Dkt. 42-1.

For example, Molly A. Elkin has over 30 years of civil litigation experience with particular emphasis in wage and hour collective and class actions on behalf of employees in FLSA and other wage cases, including numerous cases brought on behalf of tipped workers, and has served as lead counsel in hundreds of multi-plaintiff court and arbitration cases. *Id.* ¶¶ 1-4. Similarly, the attorneys at Youtz & Valdez PC have considerable experience litigating wage and hour class and collective action cases on behalf of workers in New Mexico and elsewhere. *Id.* ¶¶ 16-17. *See also Cisneros*,

2021 WL 2953117 at *4 (noting that the firm of Youtz & Valdez is "experienced in handling wage and hour class and collective actions"). Class Counsel have been actively involved in litigating the case since its inception and in resolving this case through settlement. Therefore, the adequacy of representation factor has been met.

### ii. Rule 23(e)(2)(B): The Settlement was Negotiated at Arm's-Length

Settlements are appropriate where the negotiations "were conducted in a manner that would protect and further the class interests." *Montgomery*, 2021 WL 1339305, at *4 (quoting Fed. R. Civ. P. 23, Advisory Committee notes).The Parties here engaged in principled negotiations, based on information provided by Defendants, including employment records, tip distribution records, other financial information, employment policies, and sworn declarations in support of collective action certification. *See* Elkin Decl. ¶¶19-20, Dkt. 42-1; Agreement ¶ 11.8, Dkt 42-2.

These objective materials allowed the Parties to engage in principled, arm's length negotiations, including by creating a damages model used to shape Plaintiffs' offers, counteroffers, and ultimate acceptance of the agreement. Defendants produced records of the tips earned at each of the three open stores for a year-long period. Because Defendant did not maintain records of tips for the entire recovery period, Plaintiffs used the data produced to extrapolate damages going back to the date that each store location opened, and forward through March 21, 2025—the date that Defendants stopped retaining Budtenders' tips. Elkin Decl. ¶ 19, Dkt. 42-1. Defendants also produced data showing each Class Member's start and end date, which Plaintiffs used to assign settlement amount allocations to each Class Member. Plaintiffs then submitted a settlement demand to Defendants along with the spreadsheets reflecting these amounts and their underlying calculation methodology. *Id.* This model and the underlying calculations continued to provide the basis for Plaintiffs' counteroffers and the Parties' continued settlement negotiations, which continued across multiple emails and telephone calls. *Id.* ¶ 20. Such principled, arms-length

negotiation culminated in the fair, reasonable agreement here. *See Key v. Butch's Rate Hole & Anchor Serv., Inc.*, No. CIV 17-1171 RB/KRB, 2022 WL 457915, at *2 (D.N.M. Feb. 15, 2022) (finding that, *inter alia*, the parties' use of a damages model indicated that the settlement process was "open, fair and honest").

### iii.   Rule 23(e)(2)(C)(i)-(iv): The Settlement Provides Adequate Relief

Rule 23(e)(2)(C) sets forth four criteria for assessing the adequacy of relief: (1) "the costs, risks, and delay of trial and appeal;" (2) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" (3) "the terms of any proposed award of attorneys' fees, including timing of payment;" and (4) "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C), (3).

### 1.   The Relief is Adequate Taking into Account the Costs, Risks, and Delay of Further Litigation

With this factor, the Court weighs the adequacy of the relief against the "the cost and risk involved in pursuing a litigated outcome." *Montgomery*, 2021 WL 1339305, at *5 (quoting Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment) (internal quotation marks omitted).

Here, Plaintiffs faced risk in establishing a violation under the New Mexico Minimum Wage Act, NM Stat. § 50-4-22(C)(6), which requires that tips earned by employees must be retained by employees. Under that Act's language, Defendants argued that this requirement applies only apply to employees who earn less than the minimum wage, and the Plaintiffs here earn a direct wage greater than or equal to the minimum wage. There is no case law or other authority providing further guidance on this question. Moreover, Plaintiffs faced some risk based on Defendant's argument that the treble damages penalty under NM Stat. § 50-4-26(C) would not apply to tips because that provision states that employers who violate any provision Section 50-4-

22 NMSA 1978 "shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages." Defendants argued that tips are not considered minimum wages and as such, the treble damages provision of the statute would not apply.

Throughout the litigation, Defendants also maintained that the amounts of money left behind by customers at issue were not tips, but rather charitable donations given by customers to Defendants' "High Horse Gives Back" program, a contention that would yield extensive legal and factual disputes at both summary judgment and trial. Finally, Defendants' ability to pay provided a substantial impediment to Plaintiffs' obtaining full relief here. Defense counsel provided Plaintiffs' counsel with bank statements showing that Defendants would be hard-pressed to fund a settlement greater than the amount obtained here. Elkin Decl. ¶¶ 20-24, Dkt. 42-1.

Without a settlement, the Parties would need to engage in far more extensive discovery, class certification briefing, summary judgment briefing, trial, and potentially an appeal. To continue to litigate this case would come with great costs and risks, whereas agreeing to a settlement now provides the Settlement Class Members with a substantial portion of their potential relief. *Id.* ¶¶ 24-25. Indeed, the recovery reflects 49.3% of the total relief sought (i.e., the settlement amount equals 49.3% of full backpay plus three times that amount as liquidated damages). *Id.* ¶ 30. Accordingly, the value of a settlement outweighs the costs and risks of further litigation. *See Montgomery*, 2021 WL 1339305, at *6 ("Given that outstanding questions of law and fact place the ultimate outcome of this matter in doubt, and considering the amount of potentially recoverable damages, the value of the class action settlement outweighs the mere possibility of future relief after protracted and expensive litigation.").

### 2. The Relief is Adequate Taking Into Account the Effectiveness of the Proposed Method of Distribution

The second factor the Court considers in determining whether a proposed settlement provides adequate relief requires the Court to "scrutinize[] the method of claims processing to ensure that it facilitates filing legitimate claims" and consider "whether the claims process is unduly demanding." *Montgomery*, 2021 WL 1339305, at *6 (quoting Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment) (internal quotation marks omitted); *Anderson Living Tr. v. Energen Res. Corp.*, CV No. 13-909 WJ/CG, 2021 WL 3076910, at *4 (D.N.M. July 21, 2021). "[T]he claim process should be as simple, straightforward, and nonburdensome as possible." *In re Samsung*, 2020 WL 2616711, at *16.

Here, there is no claims process. Instead, all Settlement Class Members will receive a settlement payment unless they affirmatively opt out. Since no one opted out, this Settlement will provide significant relief to 169 workers, with an average settlement amount of $798.45, with 22 class members receiving more than $1500.00 after the payment of all fees, litigation costs, service awards, and settlement administration costs. Class Members simply have to open their mail and cash their settlement check to be paid. Further, the method of distributing relief to the Class is effective. Payments will be mailed by Rust within 14 calendar days of the settlement's effective date. Agreement ¶¶ 3.1.j-3.1.k, 10.5, 12.1, Dkt. 42-2; *see Chavez Rodriguez v. Hermes Landscaping Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *3 (D. Kan. Jun. 18, 2020) (checks distributed by hand and/or mail meet Rule 23 requirements for proper process of claims and efficient distribution of relief).

### 3. The Relief is Adequate Taking Into Account the Terms of Any Proposed Award of Attorneys' Fees

The third criteria for weighing the adequacy of relief requires the Court to consider the "terms of any proposed award of attorney's fees, including the timing of payment." Fed. R. Civ.

P. 23(e)(2)(C)(iii). Here, Class Counsel seek attorneys' fees based on a percentage of the fund in an amount of $75,000.00, representing one-third of the Settlement Amount net expenses, as well as $1,472.16 of the Settlement Fund as litigation expenses. Agreement *Id.* ¶¶ 11.1-11.7, Dkt. 42-2. Class Counsel's fee of one-third of the Settlement Amount net expenses is well within the range approved by courts in the Tenth Circuit. *See, e.g.*, *In re Thornburg Morg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1257 (D.N.M. 2012) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis.") (internal quotation marks omitted); *Shaulis v. Falcon Subsidiary LLC*, 2018 WL 4620388, at *2 (D. Colo. Sept. 26, 2018) (finding requested award of one-third of common fund for attorneys' fees to be reasonable because the award was similar to fee awards in "similar wage and hour cases in this District"). As fully set forth in Plaintiffs' Petition for Attorneys' Fees and Litigation Expenses, filed separately, these payments are fair and reasonable, are well below Plaintiffs' lodestar, and therefore, the relief is adequate taking into account attorneys' fees.

### 4. The Relief is Adequate Taking Into Account Any Agreement Required to be Identified Under Rule 23(e)(3)

This factor requires scrutiny of any "side agreements" to settle claims of objectors to the settlement agreement. *See In re Samsung*, 2020 WL 2616711, at *18. Here, no side agreements exist. Elkin Decl. ¶ 31, Dkt. 42-1. Where there are no "side agreements," this requirement is satisfied when the parties have filed the Settlement Agreement and their plan for allocating the settlement proceeds with the Court, as the parties have done here. *See Anderson Living Tr.*, 2021 WL 3076910, at *5.

### iv. The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other

The final Rule 23(e)(2) factor requires the Court to consider whether the settlement agreement provides for "inequitable treatment of some class members vis-à-vis others." Fed. R.

14

Civ. P. 23, Advisory Committee's Note to 2018 Amendment. Here, all Settlement Class Members have the same claims for unlawfully retained tips, so "settlement shares for each class member will be derived using an identical formula applied to all class members" based on a point system, with points allocated based on weeks worked as budtenders. *Montgomery,* 2021 WL 1339305*,* at *8 ("[B]ecause there is only a single claim at issue and the settlement shares will be calculate using an identical formula, all class members are treated equitable relative to each other."); Agreement ¶ 11.8, Dkt. 42-2. Similarly, all Settlement Class Members will be subject to the same release. *Id.* ¶ 1.10.

All Settlement Class Members are treated equally with regard to settlement distribution. Indeed, the Notice informed the Settlement Class Members of the distribution methodology and provided them with an opportunity to dispute their points. As mentioned above, no Class Member disputed their allocations. Each Settlement Class Member's settlement amount will be treated as 25% backpay and 75% liquidated damages. *Id.* ¶ 11.8.

The Court should also award service awards of $1,500.00 each to Class Representatives Ochoa, Orona, and Villagomez as part of the distribution of the fund. Incentive awards to class representatives in wage and hour litigation are appropriate when they "compensate those individuals for the employment-related risks they bear in bringing forward claims on behalf of a class and for their additional efforts that have benefitted the class." *Cisneros*, 2022 WL 2304146, at *10 (internal quotation marks omitted). Here, Class Representatives took on risk in suing their former employer in New Mexico's tight-knit cannabis industry. They also spent considerable time assisting counsel in explaining Defendants' polices, providing documents supporting Plaintiffs' claims, and assisting Plaintiffs' counsel in evaluating and ultimately agreeing to a settlement. Elkin Decl. ¶¶ 22-23, Dkt. 42-1. "The reasonableness of a service award to a named Plaintiff is not

generally listed as a factor to consider when deciding whether to approve a settlement," *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-MKT, 2018 WL 2183988, at *3 (D Colo. May 11, 2018). Nonetheless, service awards of $1,500.00 are reasonable and fair. *See, e.g.*, *Montgomery*, 2021 WL 1339305, at *8-9 (approving a service award of $25,000 to named Plaintiff); *In re Universal Service Fund Telephone Billing Practices Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D.N.M. May 12, 2011) (approving $10,000 service award to named plaintiff). Moreover, each Settlement Class Member was notified of the service award and none objected. Second Declaration of Molly Elkin ¶ 25. Dkt. 48.1.

### c.   The Settlement also Satisfies the Tenth Circuit's *Rutter* Factors

In the Tenth Circuit, courts also consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1188. The fourth *Rutter* factor is the only one that does not directly overlap with the Rule 23(e)(2) factors. *See Cisneros*, 2022 WL 2304146, at *11; *In re Samsung*, 2020 WL 2616711, at *18.

### i.   The Settlement was Fairly and Honestly Negotiated

For the reasons set forth in Section VI(b)(ii), discussing the principled, arms-length negotiations here, the proposed settlement terms were fairly and honestly negotiated by both Parties.

### ii.    There are Serious Questions of Law and Fact, Placing the Ultimate Outcome of the Litigation in Doubt

As set forth in Sections VI(b)(iii)(1) and VI(b)(iv), Plaintiffs faced hurdles proving their claims under the NMMWA, having to show that the prohibition on tip retention and New Mexico's treble damages provision applied to Plaintiffs. Moreover, Defendants provided Plaintiffs' counsel with documents demonstrating their inability to pay a greater judgment than the settlement reached here. *See* Elkin Decl. ¶ 20, Dkt. 42-1.

### iii.    The Value of Immediate Recovery Outweighs the Mere Possibility of Future Relief

The settlement provides "substantial, guaranteed relief" now. *Lucas*, 234 F.R.D. at 694. The alternative would be years-long litigation including prolonged discovery, class certification briefing, summary judgment briefing, trial, and a potential appeal. The value of immediate relief therefore greatly outweighs the possibility of future relief, as described in more detail in Section VI(b)(iii)(1), especially where, as here, the risk that Defendants would be unable to pay a greater judgment than the settlement amount reached here would only be compounded by extending the proceedings. *See* Elkin Decl. ¶¶ 20-22, 24-25, Dkt. 42-1.

### iv.    The Parties Believe the Settlement is Fair and Reasonable

Under this factor, "the recommendation of a settlement by experienced plaintiffs['] counsel is entitled to great weight." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288-89 (D. Colo. 1997). Here, the parties were represented by experienced counsel who believe that the settlement is reasonable and fair. As explained above, Class Counsel has substantial experience litigating wage and hour class and collective actions. Elkin Decl. ¶¶ 1-17, Dkt. 42-1. Similarly, Defendants have been represented by experienced counsel Daniel Ivey-Soto. Based on Counsel's professional experience, the Parties believe that the settlement is fair, reasonable, and adequate.

## VII.    CONCLUSION

For the reasons set forth above, and for the reasons set forth in the parties' Joint Motion for Preliminary Approval of FLSA and Class Action Settlement, Dkt. 42 as well as Plaintiffs' contemporaneously filed Petition for Attorneys' Fees and Litigation Expenses, the Parties respectfully request that the Court:

(1) Conclude that a bona fide legal dispute between the Parties as to whether Settlement Class Members are owed any wages, redistributed tips, or statutory damages exists;

(2) Grant final approval of the Agreement, Dkt. 42-2, as fair, reasonable, adequate, and binding on all Settlement Class Members who have not timely opted out of the Settlement;

(3) Approve the procedure for Defendants to pay the Settlement Amount along with the employer's share of payroll taxes into the QSF as described in Paragraphs 1.7, 3.1.j, 10.3-10.5, and 13.2 of the Agreement, Dkt. 42-2;

(4) Approve the Administration of the QSF as described in Paragraphs 10-13 of the Agreement, Dkt. 42-2;

(5) Dismiss the claims of the Named Plaintiffs, Opt-In Plaintiffs, and Class Members who have not timely opted out of the Settlement with prejudice, Dkt. 42-2, ¶ 15.1;

(6) Approve an award of attorneys' fees in the amount of $75,000.00 and litigation expenses equaling $1,472.16, Dkt. 42-2 ¶ 9.4, and as supported by Plaintiffs' contemporaneous, Petition for Attorneys' Fees and Litigation Expenses;

(7) Approve the Service Awards to Plaintiffs Ochoa, Orona, and Villagomez, as set forth in the Settlement Agreement, Dkt. 42-2, ¶ 11.5;

(8) Approve payment of settlement administration costs to the Settlement Administrator in an amount not to exceed $9,090.00, as set forth in the Settlement Agreement, Dkt. 42-2, ¶ 11.3;

18

(9) Certify a class as defined in the Parties' Agreement for settlement purposes only pursuant to Rule 23(e) of the Federal Rules of Civil Procedure;

(10) Retain jurisdiction over the interpretation and implementation of the Settlement Agreement, Dkt. 42-2, ¶ 16.1.

Dated: July 21, 2025                                Respectfully submitted,


/s/ Molly A. Elkin
Molly A. Elkin (*associated pro hac vice*)
Patrick J. Miller-Bartley (*associated pro hac vice*)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., NW
Suite 1000
Washington, DC 20005
Telephone: (202) 833-8855
Fax: (202) 452-1090
mae@mselaborlaw.com
pmb@mselaborlaw.com


/s/ Stephen Curtice
Shane Youtz
Stephen Curtice
James A. Montalbano
Youtz & Valdez PC
900 Gold Ave. SW
Albuquerque, NM 87102
Telephone: (505) 244-1200
shane@youtzvaldez.com
stephen@youtzvaldez.com
james@youtzvaldez.com


***Class Counsel***

/s/ Daniel Ivey-Soto
Daniel A. Ivey-Soto
InAccord, P.C.
1420 Carlisle Blvd. NE, Ste. 208
Albuquerque, NM 87110-5662
Tel: (505) 881-4475
Fax: (505) 248-1234

Daniel@InAccord.pro

***Attorney for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2025 a true and accurate copy of the foregoing document

was delivered by electronic notification through the CM/ECF system to all parties of record.


*/s/ Molly A. Elkin*
Molly Elkin