IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

DEENAY OCHOA, ADRIAN ORONA,
JUAN VILLAGOMEZ, *and all others
similarly situated*,

      Plaintiffs,

      v.                        Case No. 2:24-cv-00597 KWR/KRS

RUBEN ISRAEL AGUILAR, HIGH
HORSE INVESTMENT LLC, and HH
ADMINISTRATION LLC,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AND ENTER JUDGMENT</u>

THIS MATTER comes before the Court on Plaintiffs' Motion to Enforce Settlement and Enter Judgment (Doc. 54) and Plaintiff's Motion for Status Conference (Doc. 57). According to the parties' settlement agreement, Defendants were required pay $225,000, plus employer payroll taxes, to the settlement fund on September 3, 2025. Yet, Defendants failed to make any payment, and Defendants have provided no information in response to Plaintiffs' inquiries. Defendants did not respond to the motions.

Having reviewed the briefing, the settlement agreement, and the applicable law, the Court finds that Plaintiffs' Motion to Enforce Settlement and Enter Judgment is well-taken and, therefore, is **GRANTED**.

### BACKGROUND

This dispute arises from a settlement agreement entered into by Plaintiffs Deenay Ochoa, Adrian Orona, and Juan Villagomez, on behalf of themselves and other similarly situated individuals, and Defendants Ruben Israel Aguilar, High Horse Investment LLC, and HH

Administration LLC. Doc. 42-2 (Settlement Agreement). Under the agreement, Plaintiffs agreed to release their Fair Labor Standards Act, New Mexico Minimum Wage Act, and unjust enrichment claims in exchange for $225,000, plus employer payroll taxes, to be paid by Defendants. *See* Doc. 42-2 §§ 3.1(j), 10.4, 1.5, 14, 15. The agreement was signed by Plaintiffs, Defendant Ruben Israel Aguilar on behalf of Defendants, and the parties' counsel on April 17, 2025. *Id.* at 34–35.

As relevant here, on July 28, 2025, the Court granted the parties' joint motion to approve the settlement and their stipulation of dismissal, Doc. 51, and Plaintiffs' requested attorneys' fees and costs, Doc. 52. The Court filed a judgment dismissing the claims with prejudice. Doc. 53.

According to the agreement, Defendants were required to fund the Ochoa Qualified Settlement Fund ("QSF") seven days after the deadline to appeal. Doc. 42-2 §§ 3.1(i)–(j), 10.4, 10.5. Since the deadline to appeal the Court's order was August 27, 2025, Defendants were required to fund the QSF by September 3, 2025. *See id.* § 3.1(j).

On August 22, 2025, the settlement administrator sent Defendants the funding obligation information, and on September 2, 2025, the settlement administrator emailed Defendant Ruben Aguilar to remind him of the funding deadline. Doc. 54-1, ¶¶ 3, 7, Elkin Affidavit. Yet, Defendants failed to fund the QSF on September 3. *Id.* ¶ 5. Plaintiffs' counsel has repeatedly reached out to Defendants' counsel about the missed deadline. *Id.* ¶¶ 7–9. In September, Defendants' counsel indicated to Plaintiffs' counsel that communication between him and his clients had "broken down," and he was unable to provide information about funding the QSF. *Id.* ¶ 8–9.

On September 10, 2025, Plaintiffs filed the motion to enforce the settlement agreement and enter judgment. Doc. 54. On April 15, 2026, Plaintiffs motioned for a status conference and provided further documentation. Doc. 57. In this second motion, Plaintiffs notified the Court that

Defendants High Horse Investment LLC and HH Administration LLC have changed their business registration status from "active" to "dissolved" with the New Mexico Secretary of State. *Id.* ¶¶ 12–13. Defendants still have not responded to Plaintiffs' inquiries about their failure to fund the QSF and did not respond to the motions. *See id.* ¶ 15. The QSF remains unfunded. *See id.* ¶ 17.

## DISCUSSION

Because Defendants have failed to pay the settlement amount of $225,000.00 and employer payroll taxes (totaling $229,320.06) to the QSF, Plaintiffs and class request that the Court enforce the settlement and enter judgment, award post-judgment interest, order post-judgement discovery, and award Plaintiffs' attorneys' fees and costs. The Court will address each request in turn.

**I.      The Court has jurisdiction over Plaintiffs' motion to enforce.**

Before it considers the motion's merits, the Court must determine whether it has jurisdiction to consider Plaintiffs' motion to enforce. As a court of limited jurisdiction, a federal district court has ancillary jurisdiction to enforce a settlement agreement only under certain circumstances. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–81 (1994). First, if an action is dismissed pursuant to Fed. R. Civ. P. ("Rule") 41(a)(1)(A)(ii), a court "is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree." *Kokkonen*, 511 U.S. at 381–82. Second, if a court dismisses the original action pursuant to Rule 41(a)(2), the court may retain jurisdiction in its order dismissing the action. *Id.* at 381; *see also Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).

Because the parties jointly stipulated to dismissal, Doc. 47, the Court dismissed the action pursuant to Rule 41(a)(1)(A)(ii). Further, it is evident that the parties agreed to authorize the Court's enforcement jurisdiction since the settlement agreement expressly states that this Court

retains jurisdiction to enforce the agreement, Doc. 42-2 § 16.1, and the parties' proposed order included language that the Court would retain jurisdiction, Doc. 47-1. Even if the parties did not properly stipulate to dismissal and the action was dismissed pursuant to Rule 41(a)(2), the Court would still retain jurisdiction because its order specified that the Court retained jurisdiction "over the interpretation and implementation" of the agreement. Doc. 51 ¶ 10. Accordingly, the Court has jurisdiction to enforce the parties' settlement agreement. *See Kokkonen*, 511 U.S. at 381–82.

**II.     Defendants breached a valid, binding contract, and enforcement is warranted.**

Turning to the merits, settlement agreements are contracts, and a court should analyze an agreement's language as a contract. *Homestake-Sapin Partners v. United States*, 375 F.2d 507, 511 (10th Cir. 1967); *see also United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000) ("Issues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law."). Under New Mexico law, "a contract must be factually supported by an offer, acceptance, consideration, and mutual assent." *Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶ 7, 115 N.M. 665, 669, 857 P.2d 776. "For an offer and acceptance to create a binding contract, there must be an objective manifestation of mutual assent by the parties to the material terms of the contract." *Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 11, 125 N.M. 376, 961 P.2d 1283.

Here, the parties entered into a binding contract. The agreement was the result of the parties' negotiation efforts involving multiple rounds of offers, which eventually resulted in the acceptance of an offer. Doc. 54 at 4. Consideration is present since the agreement states that Plaintiffs will dismiss and release their claims against Defendants, and Defendants will pay $225,000, plus employer payroll taxes, to be distributed for the class benefit. *See* Doc. 42-2 §§ 1.7, 11, 15.1. And the parties objectively manifested their mutual assent when they signed the

4

settlement agreement, *id.* at 34–35, and later jointly filed for the Court to approve the settlement agreement, Doc. 42; Doc. 47.  Last, the agreement is effective and final since all the required conditions have occurred. *See* Doc. 42-2 § 5.2.

In September 2025, Defendants breached the contract by failing to fund the QSF by the deadline specified in the contract. Defendants were required to fund the QSF by September 3, 2025, seven days after the deadline for appeal. Doc. 42-2 § 3.1(j) ("Within seven (7) calendar days of the [the date on which the Court's final approval order is no longer appealable], Defendants will fund the Ochoa Qualified Settlement Fund ("QSF"), as set forth in Paragraph 10.4 of this Agreement."). The settlement administrator calculated the total as $229,320.06 and sent the funding information to Defendants on August 22, 2025, which Defendants did not dispute. Elkin Aff. ¶¶ 3–4. The settlement administrator directly emailed Defendant Ruben Aguilar on September 2, 2025, to remind him of the upcoming funding deadline. *Id.* ¶ 7. Yet, Defendants failed to pay by September 3, 2025, and still have not funded the QSF despite Plaintiffs' repeated reminders and inquiries. *Id.* ¶¶ 5–9.

Following the filing of September's motion to enforce, Defendants' counsel has received additional notifications of his clients' continued breach from (1) Plaintiffs' communication with the settlement administrator, Doc. 56 ¶ 6, (2) Plaintiffs' notification to the Court, Doc. 56, and (3) Plaintiffs' motion for status conference, Doc. 57. Although Defendants' counsel has reported communication issues with his clients to the Court and Plaintiffs' counsel, *see* Doc. 50; Doc. ¶¶ 7–9, no substitute counsel has entered an appearance, and he remains counsel on record. Thus, Defendants are well aware that they have breached the settlement agreement and that Plaintiffs have moved for the Court to enforce the settlement agreement and enter judgment.

In sum, there is no dispute that the settlement agreement is a valid, binding contract. There is no dispute that Defendants were ready, able, and willing to exchange the payment when they entered into the settlement agreement on April 17, 2025. And there is no dispute that Defendants failed to fund the QSF on September 3, 2025—in breach of their obligations under the settlement agreement—and have continued to breach the agreement by leaving the QSF unfunded for over nine months. Although the settlement agreement did not include a default provision, Defendants consented to the motion when they failed to respond. *See* D.N.M.LR-Civ. 7.1(b).

Therefore, enforcement of the settlement agreement is appropriate, and Plaintiffs are entitled to judgment against Defendants. As requested by Plaintiffs, the Court will order that Defendants are jointly and severally liable for the settlement amount and employer payroll taxes, which amounts to $229,320.06.

## III.     The Court will award post-judgment interest as calculated by 28 U.S.C. § 1961.

Next, Plaintiffs seek post-judgment interest in the amount of 8.75%, pursuant to NMSA 1978, Section 56-8-4(A) (2004). For the reasons below, the Court will instead award post-judgment interest as calculated by 28 U.S.C. § 1961.

"[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990) (quoting *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1280 (3d Cir. 1987)). Post-judgment interest from the entry of a district court's judgment is mandatory under § 1961, which provides that post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" with interest calculated from the date of the entry of the judgment, "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the

Board of Governors of the Federal Reserve System, for the calendar week preceding." § 1961(a). Further, post-judgment interest "shall be computed daily to the date of payment . . . and shall be compounded annually." *Id.* § 1961(b). Although parties may contract for a different post-judgment interest rate, they "must express such intent through clear, unambiguous and unequivocal language." *In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009) (quoting *Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005)).

Here, the parties' settlement agreement did not include language addressing post-judgment interest. *See* Doc. 42-2. Thus, the Court will grant post-judgment interest as required by § 1961.

**IV.    <u>The Court will order Rule 69(a)(2) discovery</u>.**

Additionally, Plaintiffs request that the Court order discovery under Rule 69. "In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person--including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). Since the Court will enter a money judgment against Defendants, Plaintiffs may be entitled to immediate discovery. *See Fox v. Nat'l Oilwell Varco*, 602 F. App'x 449, 452 (10th Cir. 2015).

Defendants have been uncooperative and unresponsive since September 2025. Plaintiffs have since discovered that Defendant High Horse Investment LLC and Defendant HH Administration LLC, changed their status from "active" to "dissolved" with the New Mexico Secretary of State on October 10, 2025. *See* Doc. 57-1 at 5; Doc. 57-2 at 4. Defendant Aguilar is listed as the organizer of Defendant High Horse Investment LLC, Doc. 57-1 at 2, and member and manager of HH Administration LLC, Doc. 57-2 at 3. Defendants' counsel has represented to Plaintiffs' counsel that his clients were not responding to his emails. Doc. 54-1 ¶ 9. Further, Defendants have not responded to Plaintiffs' motions or provided any information to the Court

regarding their failure to pay the required funds. Thus, the Court finds that there is sufficient justification for immediately ordering discovery in aid of judgment and execution. *See Rivera v. Am. Med. Network LLC*, No. 20-24440-CIV, 2023 WL 399864, at *3 (S.D. Fla. Jan. 6, 2023), *report and recommendation adopted*, No. 20-24440-CIV, 2023 WL 399711 (S.D. Fla. Jan. 25, 2023).

Accordingly, the Court will order discovery pursuant to Rule 69(a)(2) so that Plaintiffs may conduct discovery in aid of the judgment that the Court will enter concurrently herewith. The discovery shall comply with federal and state rules of procedure. *See* Fed. R. Civ. P. 69(a)(2).

## V.       **Plaintiffs are entitled to attorneys' fees.**

Finally, Plaintiffs preliminarily seek the attorneys' fees and costs incurred in enforcing the parties' settlement agreement. Attorneys' fees may be awarded when the parties contract for attorneys' fees as damages. *First Nat'l Bank in Albuquerque v. Sanchez*, 1991-NMSC-065, ¶25, 112 N.M. 317, 815 P.2d 613 ("[A] party certainly may contract to pay reasonable attorney fees incurred in connection with the enforcement of a contract."); *First Nat'l Bank of Clovis v. Diane, Inc.*, 1985-NMCA-025, ¶ 32, 102 N.M. 548, 698 P.2d 5 ("The general rule is that each party to litigation must pay his own counsel fees, and attorney fees are not allowable in the absence of a specially authorizing statute or agreement.").

Here, the settlement agreement clearly and unambiguously addresses attorneys' fees and costs in enforcement actions. The agreement states: "If any Party institutes any legal action, arbitration, or other proceeding against any other Party to enforce the provisions of this Agreement, the successful Party will be entitled to recover from the unsuccessful Party reasonable attorneys' fee and costs." Doc. 42-2 § 20.1. Again, Defendants failed to fund the QSF in breach of the parties' settlement agreement, which required Plaintiffs to seek enforcement. And Plaintiffs have prevailed

in enforcing the agreement against Defendants. Accordingly, Plaintiffs are entitled to an award of attorneys' fees and costs under the plain language of the agreement's enforcement provision. Once the enforcement proceedings have concluded, Plaintiffs may request reasonable attorneys' fees and costs for the final total incurred in enforcing the settlement agreement.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Enforce Settlement and Enter Judgment (Doc. 54) is hereby **GRANTED** for the reasons described in this Memorandum Opinion and Order. Plaintiffs' Motion for Status Conference (Doc. 57) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendants shall fully perform under the settlement agreement **within fifteen (15) days** of the entry of this order. Defendants are jointly and severally liable for the total amount of $229,320.06.

**IT IS FURTHER ORDERED** that the Court awards post-judgment interest pursuant to 28 U.S.C. § 1961.

**IT IS FINALLY ORDERED** that Plaintiffs are entitled to attorneys' fees in an amount to be determined at the conclusion of the enforcement proceedings.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

9